Jim v. Shiprock Associated Schools, 19-2100. Mr. Jordan, would you proceed please? Good morning, your honors. Greetings from the state of New Mexico. I hope that I find you well and safe during this very difficult time. Thank you. And also to my dear friend David Gomez. I hope you are well and safe as well, my friend. Today we are addressing the question of whether or not the district court properly granted summary judgment in a case involving the question of whether Shiprock Associated Schools Incorporated is an Indian tribe. It is the position of the plaintiff that it is not an Indian tribe for the purpose of the Title VII exemption. We acknowledge from the get-go that whether or not an entity is an Indian tribe generally depends on the statute and the statutory history that is unique to any particular situation. You can be an Indian tribe for one purpose and not for another purpose. So we are cautious to try and analyze this from a Title VII perspective and not overly cross-apply other statutory schemes. Mr. Jordan, the ADA is at play here too, right? The Americans with Disabilities Act and also the Federal Pregnancy Act. Is it your premise that Indian tribe has the same meaning in the ADA that it has in Title VII? Well, we brought the claim primarily under the Federal Pregnancy Act, which we believe brings pregnancy into the Title VII protections. So yes, we assert that it is the same for the purpose of the Pregnancy Act as it is for Title VII. That's our position. Well, wait a minute. Let me be clear. There is a Title VII claim and Title VII covers pregnancy discrimination, right? Yes, which is our claim. You do not have an ADA claim here too? We were making a pregnancy claim. We do not have an ADA claim. We're making a pregnancy claim. Okay. My client in the complaint, we asserted pregnancy discrimination specifically. Okay. Okay. Thank you. You're welcome. The question of whether or not a school is an Indian tribe is a very complicated question in our opinion. And the reason for that is the reality is that there is a hodgepodge of regulations that apply to these schools. There is a, in our opinion, extensive federal involvement in these schools. And from our perspective, a minimum of tribal involvement. For Shiprock Associated Schools, what we acknowledge that it was designated as a tribal organization by the Navajo Tribal Council, which seems to cut in favor of the Appalee. There is also a reauthorization process that the Navajo Nation conducts, which again, seems to cut in favor of the Appalee. However, the reauthorization process by the Navajo tribe, according to the facts that we submitted that were undisputed, is once every 10 years, which we contend is a very loose regulation by the tribe. Whereas there are many, many federal controls that are in place in these schools on an ongoing and regular basis. A lot of those controls stem from the fact that the school receives federal funding and the federal government maintains control over the federal funding, which we believe is relevant in this context. In their brief, the Appalee kind of dismissed it and said, essentially, well, of course, the federal government maintains control over their money. Well, yeah, but the purpose of determining whether they're a school, in our opinion, whether the school is an Indian tribe or not, in our position, is down to the question of who is controlling this entity. In our position, if the federal government is the real controller here, if this is really an operation of the federal government and the tribe is not controlling it, then it should not be designated as a Indian tribe for the purposes of Title VII. Mr. Jordan, let me ask you a couple of questions relative to your statement there. The federal government, you say, provides money to them. Are you talking about through the Tribally Controlled Schools Act, money is provided to them? Yes. Okay, well, the Navajo tribe has the authority to designate what school will be the recipient of that money, right? The Navajo tribe has the, yes, I suppose that that is true, in the sense that they can designate whether you're a tribal organization for the purpose of being eligible. No, go ahead. I'm sorry. The eligibility decision has to be made by both the director of the BIA and the Navajo Nation, both. I mean, it's an error to say it's only a tribal designation because there are regulations about when the director can and can't determine that a school is eligible for would have no role if the tribe had not designated Shiprock to be a recipient of the money, right? No role relative to Shiprock. Yes, yes, sir, that is true. It would, but my point is that the BIA also has to make that designation. They also have... I think we may have lost you. Yeah, Mr. Jordan, can you hear us? Kevin, stop the clock, if you would, please. Our point here is to say... I'm sorry, am I cutting somebody off? No, you regrettably have been cut off, and we're trying to figure out a way to fix that. So, I'll tell you what, at least for the moment, let's just have you run 10 seconds long. If you want to run 10 seconds long, and just pick up where you left off, and we'll go from there, okay? Okay, sir, okay. I promise you I have the best internet connection Gallup, New Mexico permits. I believe you. Go ahead. Cross my heart, hope to die. Okay, so our position is that it's not that the tribe has no involvement, sir. It's that it has only a very loose involvement. It originally designates it as a tribal organization, and then a reauthorized once every 10 years, once a decade, whereas the BIA maintains constant control in the form of the money. The money does not flow through the Navajo Nation. It flows directly from the BIA to the school, and there are... Mr. Jordan, I'm sorry to interrupt, but I want to clarify on that. I thought that we have here basically the school or the defendant being the grantee of that money from the BIE, basically. The Board of Indian Education makes them a grantee, and doesn't it flow through the board to then get to the grantee, or am I misunderstanding that? I thought there was some effort to change that so that they might actually obtain their funds directly from BIE, but that didn't happen. In section 7 of our statement of facts, Judge, we cited the deposition of the 30B6 deponent that was produced by the school, which told us that no money comes through the Navajo Nation to the school. So that's what I'm relying on, paragraph 6 of our statement of facts and their testimony. So it comes directly from the BIE? That is my understanding. Bureau of Indian Education? Yes. Well, clarifying the connection with the Navajo Nation, all board members are absolutely true, sir. We do not dispute that. Okay, well, more it seems to me problematic for your position is the fact that all board members have to swear an oath. Is that not right to protect, defend the laws and government of the Navajo Nation? Why doesn't that create a connection that is pretty tight with the tribe? I mean, they're swearing an oath to uphold the laws of the nation. I will agree with you that it creates a connection. I do not agree that it connects connection that is tight. And the reason, sir, is the accountability system that's put in place. Because the Navajo Nation only reviews the school once every 10 years, there really is very little oversight by the Navajo Nation as to what's going on with the school. I mean, once a decade is not very much. I mean, you think about 10 years ago, how different the it is today. A year ago, but let me or even nine months ago, right. But let me ask you, I don't have the fact right in front of me. But does I at least I thought I read somewhere that the Navajo Nation has a procedure to remove board members. Is that not right? They treat them as any other election elected officials and they're subject to recall. If under Navajo law, well, then the 10 years really doesn't does not fully encompass the scope of their responsibility or control over the board members, right? We contend, sir, we contend that the school board itself has only marginal control over the school that the director contained continue the director of the BAE and and his eight employees can on a continuing basis have extensive control over the school. Look, sir, I'm not trying to contend that the tribe has no involvement here. I'm trying. I'm simply trying to say that the federal government's control is more significant, far more significant because of the budgetary issues that are at stake there. They limit what you can do with the money they limit how you can invest the money they apply wage and labor standards. If you're going to hire construction employees with wage limits that are set by the I mean, the control on the ongoing basis, the involvement of the BAE is so extensive that our position is that the tribal involvement is more in name and more symbolic than it is actual. And that's where we believe the district court erred. The district court applying the South Dakota case, the Guy Dosh case, which we contend was a misapplication of this court's opinion in the DILT case, looked at, I think, more the formality of what's happening and not the reality of what's happening. Can I ask you, Mr. Jordan, as far as the reality, and I think you you present your argument so well. But so you have let's let's just ask you an illustration. So help me understand how this would apply. So let's say we have a lot of private museums all over the United States, I'm sure in Gallup and here in Oklahoma City. And a lot of these museums, I think, will receive quite a bit of money from the federal government, or at least for my question, just assume that they do. And like any federal grantee, let's assume that the National Endowment of the Arts or whoever the governing body from the federal government is, puts all sorts of conditions on the who may be beholden to the federal government for, let's say, hypothetically 85% or 90% or 100% of its funding. Does that make them a federal entity, as opposed to a, say, a non-profit state chartered institution? No, sir, I don't believe that it does. What's different about your situation? Because we're dealing with Indian tribes. We're dealing with the long history of federal responsibility to educate Indian children. I think it goes without saying that the federal government assumed, as it settled its treaties with the Indian tribes, a large responsibility for education of children. That included the Navajo Treaty, which included a responsibility for educating children. Most of these tribally controlled schools were BIA federal schools that conducted the treaty responsibilities of the Navajo Nation. The question in this case is, did the Tribally Controlled Schools Act make one of these schools an Indian tribe for the purpose of Title VII, which is where I think your analogy doesn't fit within this scheme. I'm not trying to say that anybody who gets funds becomes a federal entity. I'm saying that Shiprock Associated Schools is not an Indian tribe, because the federal government maintains such incredible control over how they do their activities, that to call it an Indian tribe is to elevate form over substance. So that's the position we're taking. And I see I'm down to two minutes, so I'm going to, if I can, retain those two minutes for rebuttal, sir. That's fine. Mr. Gomez? You're on mute. You're muted, Mr. Gomez. You're still muted. Okay. Okay. How's that? That's great. Good morning. May it please the court. My name is David Gomez. I represent Appali Shiprock Associated Schools, a tribal organization authorized by the Navajo Nation to act as a Navajo community school and to carry out essential governmental functions for the nation, including preschool, elementary, secondary, residential, and associated programs for Navajo students at Shiprock New Mexico on the Navajo Nation. Mr. Jordan wants to focus on reality, and so would we. First off, with respect to reauthorization of the Shiprock Associated Schools, we have a couple of actual authorizations in our record in which the Navajo Nation Board of Education looks at the reauthorization of the school, and this is in the Appellants Index at 81, and we also have a second one at the Appellants Index at 88. First off, I'd like to point off that neither of these are for 10 years, although the the nation was aspiring to go for a 10-year reauthorization period. If you look at these two reauthorizations from the 2013 school year and also the 2017 through 2019 school years, you'll see that the first one is a reauthorization for one year, and the second reauthorization is for two years from 2017 to 2019, so therefore there is no 10-year reauthorization period. Second, the very fact that the Department of Diné Education, which is the enforcement arm of the Navajo Nation Board of Education, does these reauthorizations on a basis that it deems appropriate shows the degree, it shows actually only part of the degree of control, the extensive control that the Navajo Nation has over these schools. As you know, the test for whether a tribal organization should be considered Indian tribe for purposes of Title X has to do with whether or not a tribal organization has the approval of an Indian tribe and the degree of control that the Indian tribe exercises over the entity. I'd like to point out that the degree of control that the Navajo Nation has over the Shiprock Associated Schools is so pervasive that it even dictates the number of days that a school board president must give school board members to have before they can have a meeting. Going back to these authorizations that come from the Navajo Nation Board of Education through the Department of Diné Education, we have extensive requirements that the school must comply with. First off, we have the basic authorizations, which lays out the authority for the Nation to control the schools, stating that the Navajo Nation Board of Education also conditions its sanction approval and authorization upon standard conditions, which it has attached, that the Navajo Nation places upon Navajo Nation tribal organizations, which are authorized to programs and or residential programs. Okay, so that is the first layer of approval. The second layer is attached to Exhibit B of the first reauthorization. It says conditions on sanctions of tribal organizations to operate BIE-funded education or BIA-funded education programs. I'd like to point out that the BIE, the Bureau of Indian Education, is a more or less a newer agency created under the Department of Interior to handle Indian education. The BIE operates schools, and it also pays for schools. We're in that second class. We're what's called a grant school because we receive grants under the Tribally Controlled Schools Act. Some of the regulations and controls that Mr. Jordan is referring to are the BIE-controlled schools, which are entirely separate institutions, which SASE is not. We are a tribally controlled school under the Tribally Controlled Schools Act. Okay, that's an important point. Let me be clear on that. So, you're saying that the level of control that Mr. Jordan was referring to that the federal government has with respect to tribal schools was referring to the category of schools that are actually run by the BIE as opposed to those running through the Tribally Controlled Schools Act? That is correct, Your Honor. Okay. And the district court made that specific finding, I believe, that you were a tribally controlled school when he spoke about 25 CFR Part 38, which apparently discusses teacher performance, grievance, discharge issues. So, you're saying that the district court was correct that there's no control then by the feds over teacher grievance issues, teacher discharge issues, or is that correct? That is correct, Your Honor. The Navajo Nation has its own set of laws under which those sorts of employment issues can be addressed, and those are tribal laws to which SASE is required to follow. If it was a tribally controlled school, if it wasn't a tribally controlled school under the BIE, would the feds then control more of that layer of the discharge, the discipline, that sort of thing? Yes, Your Honor. If you imagine the dividing line here with SASE on one side being a tribally controlled school that is entirely subject to the laws of the Navajo Nation, including the the election laws that apply to its board members who are Navajo Nation tribal officials, and then over here we have the bureau-operated schools. SASE is over on this side where we are the tribally controlled school that is subject to complete pervasive regulation by the Navajo Nation and the regulations that Mr. Jordan was raising with respect to teacher grievances, curriculum, civil rights, and all those sorts of issues are under the regulations that relate to bureau-operated schools and not bureau-funded schools, which is what we are. Thank you. Once again, the degree of control that the Nation has even extends to its very existence. SASE could not exist or function as a school carrying out these functions on the Navajo Nation without the authority and control provided under Title 10 under the Navajo Nation Code. First off, you know, we started out by refuting his argument about control. The Navajo Nation has to approve these organizations to operate on the Navajo Nation and by so doing, they also approve these organizations to apply for funds under the Tribally Controlled Schools Act. A random non-profit could not apply to the Bureau of Indian Education for funds under the Tribally Controlled Schools Act without the approval of the Nation. If you look at the Act, it approves for funding Indian tribes and also tribal organizations with the approval of a tribe and we can't get our foot in the door without the approval of the tribe. As I've said here, we have two approvals within a 10-year period. It is not a case where the Nation approves you and then lets you wander around for 10 years without any supervision. The Navajo Nation is completely on these schools all the time. Let me clarify one thing, if I may, as it relates to the importance of the extent of control, I mean, is it a point of distinction, let's say that SASE had just been authorized by the Navajo Nation to essentially receive the funds from the BIE and to run the schools and then the Navajo Nation essentially left them to their own devices, would they still have a case for being an Indian tribe just by virtue of the authorization? Yes, Your Honor, because in order to operate as a Bureau-funded school with the authorization of the Navajo Nation under Title X of the Navajo Nation Code, the local schools are subject to all the provisions of the Navajo education laws and also, yes. I understand, yeah, I understand what the circumstance is here and in other words, that is what the Navajo Nation has chosen to do. I'm just trying to understand how important that control, which you posit to be an important factor here, it is a factor. I'm just trying to disaggregate that a little bit or separate that from the question of authorization itself. Is authorization itself enough to allow for a entity to be a tribe? In other words, if, yeah, if you did not have all of the controls that the Navajo Code puts in place relative to SASE, would you still have an argument for saying that you're an Indian tribe just by virtue of the authorization? Yes, Your Honor. To, in a way, you have to bifurcate your question into the tribal sphere and the federal sphere. Let's say that SASE went to the Navajo Nation and got its approval to seek funds under the Tribally Controlled Schools Act and at that point, for purposes of federal law, the Tribally Controlled Schools Act, yes, it would be a tribal organization and that is completely separate from the issue of the control that the Navajo Nation would have under its own laws. Okay, let me stop you there. So just at that point in this discussion, if they'd gotten that approval, they were now going to be a recipient of the funds and the Tribally Controlled Schools Act. At that point, let's just say that the Navajo Nation left them to their own devices in terms of how they went about their school system. I know that's not your position that that's happened here. Let's assume that it had happened at that juncture. Would you still be situated to say, we have the authorization, we are the tribal designated school system, therefore we are an Indian tribe for purposes of Title VII? Well, I think the GDOSH and the other cases that relate to tribal organizations and Title VII really also have to have the element of control and the element of control which is present here in this case. Well, that's what I thought. I just wanted to see what your position was on that. So you're saying the control does matter, but you got the control. We have more control than we have. Okay, I'll take that visual. Go ahead. Further comments, Council? I have a question, Council. I just kind of want to take you back to sort of the beginning of all this, which I think what you're asking us to do is to extend our case in Dill. It's Dill versus Council of Energy Resources Tribes, the 1986 case. That case didn't involve, of course, an educational setting, and I know that the district court case you want us to rely on does, but I wonder about the language in Dill, which in order to interpret this definition that we're all trying to interpret that doesn't have, there is no definition, basically, of Indian tribes. They looked for the purpose of the exception, and they said the whole purpose was to promote the ability of sovereign Indian tribes to control their own economic enterprises, and then in that case, they found that that particular council of tribes was, the purpose was to obtain the greatest possible benefit from one of the inherently valuable economic assets that they possess, energy resources, and I'm wondering, you know, do we just accept the fact that this educational setting somehow is within that purpose of the exception, which was to permit the tribes to control their own economic enterprises, and could you address that? I realize it wasn't necessarily addressed in the briefs, but I'm wondering about the extension of Dill. Sorry. Yes, your honor, I have about 49 seconds left, and I'll do what I can. I think it's a wonderful question, so take a little longer if you need to. Well, in Dill, I think Dill is actually an easy lift, because there you have a consortium of Indian tribes. Right, it was easier. We don't have to. Here you have one particular organization, and I think the degree of control that you have here, and especially in such a such a crucial area of activity, that we are clearly within the realm of control of the Navajo Nation. Well, I'm not asking about the control. That was sort of what we've been talking about. I'm asking about the whole point of the purpose, and I think there were quotations from Senator Mundt in South Dakota, who introduced the bill, talking about this being about economic enterprises. Well, and that's what I'm asking about. How does this, can we make this about economic enterprises? Well, actually, you know, economic enterprises is only part of what the senator was talking about. If you read Dill for that purpose, yeah, you could say, well, this is only limited to economic purposes, but if you read the senator's actual words that are in the case, he's talking about all the activities. He's talking about the affairs of tribes. He's just not limiting it to economics, and furthermore, we have a whole slew of cases, such as Pink, that relate to health care. We have absentee Shawnee, which refers to housing. Yeah, I understand all that. I just never really saw the issue fleshed out that I'm talking about, and there seems to be an acceptance in those cases that it's within the purpose. I would say that education is probably, you know, if you want to, it's probably more of a, well, it's hard to say, you know, what's important, education, economics, those sorts of things, but, you know, I think that education, as Mr. Jordan pointed out, is a very crucial aspect of what governments do for Indian people. In the Tribally Controlled Schools Act, we are carrying out the trust responsibilities of the United States, for the United States, for the benefit of the Navajo children out at Shiprock. Thank you. Thank you, Council. Anything further? All right, Mr. Jordan, you had an additional 10 seconds, and then we'll give you, so you have two minutes left. Kevin, could you put on there for him three minutes, and you definitely do not need to take it, Mr. Jordan, if you don't want to, but you have it. You're on, you're on mute, sir. Now I'm not. Thank you. The, I want to clarify a couple things. First of all, we are not talking about BIA-controlled schools. I am talking about Tribally Controlled Schools Act schools. I will concede that in my brief, we referenced 25 CFR Part 38, which does apply to BIA-controlled schools, and I apologize for that, esteemed judges. But in my argument, I'm talking about 25 U.S.C. Section 2507, the Tribally Controlled Schools Act statute, which says these statutes apply to Tribally Controlled Schools, and it lists all the controls that are still in place for Tribally Controlled Act schools, which include the things I mentioned in my argument, audits, financial standards, what you can spend money on, what you can't spend money on, wage limitations for construction workers, wages that are set by the United States Department of Labor. I am not at the moment talking about BIA-controlled schools. I'm talking about the Tribally Controlled Schools Act schools. So that's the first thing I wanted to clarify. The second thing I wanted to clarify is this, the assertion by the appellee that there's no 10-year process for reauthorization, and we got that directly from their employee. I asked the question, the deposition. So as long as Shiprock Associate Schools turns in these fairly routine reports, you understand the process will move to a simplified process of reauthorization for 10 years. Answer, yes. So our position continues to be that, yes, they have to receive original approval as a tribal organization, and then there's a simplified 10-year reauthorization process by the tribe. But on an annual basis, because of the financial involvement, there is a very significant amount of control. And lastly, I want to address Judge Moritz's question, because I think it was a very well-taken question. There's a major difference between what Senator Munn was talking about in terms of the tribe's own economic enterprises, the tribal government's own operations, and a Tribally Controlled Act school. And the reason it's a big difference is because they were talking about things that originated from the tribe, the tribal government's own activities, its economic activities, its governmental activities. Whereas the schools come from a long history of federal education, not tribal education. And in that history, the government has slowly been handing over education to the tribes, but it only gives up so much control out of that, and it retains so much control. That's what makes it different to me. But can't the language in Dill be read to talk about economic enterprises and economic empowerment? I mean, tribal economic empowerment? And if it is interpreted that way, then it seems to me it's not a far leap to say that education is essential to economic empowerment. I will agree that education is essential to economic empowerment as a general concept. What I'm arguing is that the history of this is different and is significant, because this is a program where the federal government has slowly been giving over control of its own schools to the tribe, so long as certain federal controls are maintained. And today, the federal government maintains a significant level of control to this day. All right. Thank you, counsel. Case is submitted.